Dear Senator Picard:
You have requested an opinion of the Attorney General regarding two sales tax elections held in the Acadia Parish Sales Tax District (the District) for the levy and collection of a one percent (1%) sales and use tax, and the rededication and reallocation of the revenues derived therefrom. The facts, as presented in your request, are as follows:
On November 2, 1982, a special election was held culminating in the electoral approval of the one percent (1%) sales tax. The proposition for said tax reads, in pertinent part, as follows:
 "Shall Acadia Parish Sales Tax District, State of Louisiana (the "District") under the provisions of Article VI, Section 29(B) of the Constitution of the State of Louisiana of 1974, . . . and other constitutional and statutory authorities supplemental thereto, be authorized to levy and collect, . . . a tax of one percent (1%) upon the sale and retail, . . . with the avails or proceeds of the tax (after first paying the reasonable and necessary costs and expenses of collecting and administering the tax) to be dedicated and used for the purpose of paying the cost of constructing, acquiring, improving, maintaining, and operating solid waste collection and disposal facilities for the District, including the payment of the cost of closing garbage dumps now owned or operated by the Parish and the various municipalities located within the District; . . . ." [Emphasis added]
Subsequently, on April 16, 1988, a special election was held resulting in the electoral approval of the rededication and reallocation of the revenues derived from the aforementioned tax. The tax proposition states, in pertinent part, the following:
 "Shall Acadia Parish Sales Tax District, State of Louisiana (the "District") under the provisions of Article VI, Section 29(B) of the Constitution of State of Louisiana of 1974, Section 2738.55 of Title 33 of the Louisiana Revised Statutes of 1950, as amended . . . be authorized to rededicate and re-allocate the revenues derived from the one percent (1%) sales and use tax (the "Tax") heretofore levied and now being collected in the District . . . as follows:
 1. In each fiscal year, there shall first be paid or set aside from said revenues, a sum sufficient to pay (a) the principal and interest on all indebtedness of the District incurred for solid waste purposes, (b) all costs, but not less than $1,850,000, annually for construction, acquiring, improving, maintaining and operating solid waste collection and disposal facilities for the Parish, . . . ; and
 2. Thereafter, the remainder of said revenues to be used for the purpose of constructing, improving, and maintaining public roads and bridges in Acadia Parish;" [Emphasis added]
You further state that the police jury proposes or has already entered into a contract for the management of the Acadia Landfill which contains or would contain the following provision:
 "F. Notwithstanding the fact that the Permit may be modified as set out in Article I, Section B(1) and (2), Contractor agrees not to accept any waste from outside the State of Louisiana unless 1) the waste is similar to waste which has been received at the Landfill and which originates from an entity that has facilities both within and outside the State of Louisiana; and 2) only then if authorized by the vote of two-thirds (2/3) of the members of the Parish Police Jury. Contractor further agrees not to accept Oilfield Wastes, as such term is defined at LSA-R.S. 30:73, at the Landfill."
You ask whether the above contractual provision exceeds the stated purposes contained in the two tax propositions approved by the voters of Acadia Parish.
R.S. 33:2738.55(C) authorizing the creation of the District provides, in pertinent part, the following:
 "C. And notwithstanding any other provision of law, and in addition to any other sales and use tax now or hereafter levied and collected, the police jury of Acadia Parish, as the governing authority of said district, is hereby authorized under the provisions of Article VI, Section 29(B) of the 1974 Constitution of the State of Louisiana to levy and collect an additional sales and use tax not exceeding one percent within the district, subject to approval at an election as hereafter provided. . . . The proceeds of the tax shall be dedicated solely for the purposes approved by the electorate, . . . ." [Emphasis added]
Further, R.S. 39:704 provides, in pertinent part, the following:
 "The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied."
It has been consistently held by this office and the jurisprudence of this state that the scope of the authority for the expenditure of sales tax revenues is concomitant to the consent of the electorate. Accordingly, the ordinary sense of the words contained in the propositions is dispositive of their meaning for the electorate approving the tax.
The two tax propositions dedicate and rededicate the tax proceeds for purposes specifically related to paying the cost of constructing, acquiring, improving, maintaining, and operating solid waste collection and disposal facilities for the District and the Parish, respectively. The propositions contain no language expressly limiting the waste to be deposited to that attributable to the Parish. Further, there is no language in either proposition authorizing the deposit of waste transported from other parts of this state and other states.
This office is cognizant of the many problems associated with landfills, and the transportation and deposit of waste therein. Landfills are scarce and will become even more limited as the demand for such areas increases. Once a parish landfill's space is exhausted, the financial burden and responsibility rests upon the Parish to procure and supply additional space for the deposit of solid waste.
The issue presented is whether the language contained in the two tax propositions (i.e., authorizing the proceeds to be used for the constructing, acquiring, improving, maintaining, and operating of the landfill for the District/Parish) is broad enough to permit the deposit of solid waste from other areas within and outside the state. We have been furnished with data indicating that as much as eighty-seven percent (87%) of the waste will be imported, leaving thirteen percent (13%) to be generated by the inhabitants of the Parish.
The tax propositions clearly state that the landfill will be maintained and operated for the District/Parish. While increased revenues may be realized from the importation of waste, we believe other factors must also be weighed and considered in determining whether the landfill would be operated for the benefit of the inhabitants of the Parish who approved the tax.
As noted above, once the landfill's space is exhausted the Parish must furnish additional land at its expense. In addition, the import of foreign waste will result in an increase in the volume of heavy traffic necessary to transport same which would likely result in the deterioration of roads and bridges.
Given the above, it is the opinion of this office that the importation of solid waste from outside the boundaries of the District/Parish, both within and without the state of Louisiana, is not authorized by the tax propositions passed by the voters. To hold otherwise would be to constitute this particular landfill as a potential dumping ground for waste from all over the nation.
Should you have any additional questions concerning this matter, please do not hesitate to contact me.
With kindest regard, I am
Yours very truly,
RICHARD P. IEYOUB Attorney General RPI:sgc cc: Ernest "Sheeney" Gautreaux